1

2

3

4              UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6

7    DIANE SLATER,                          Case No.  23-cv-03703-JD

8              Plaintiff,

                                            **ORDER RE SUMMARY JUDGMENT**
9         v.                                **AND VACATING TRIAL**

10   FEDERAL DEPOSIT INSURANCE
     CORPORATION,
11
               Defendant.
12

13        Plaintiff Diane Slater worked as a bank manager for defendant First Republic National

14   Bank until 2018.  She sued the bank on several California state employment claims.  The case has

15   traveled a winding road from state court to arbitration and now here.  The Federal Deposit

16   Insurance Corporation (FDIC) was appointed as Receiver for the bank in 2023, and removed the

17   arbitration to the Court pursuant to the removal provisions in 12 U.S.C. § 1819(b)(2)(A).  Dkt.

18   No. 1.  The FDIC also separately removed the original California state case on the same grounds,

19   which the Court related to this one and subsequently closed as duplicative.  *See* Dkt. No. 11

20   (relating Case No. 23-cv-03747); Dkt. No. 97 (closing case).  Slater's lawyer withdrew from

21   representing her over disagreements about case strategy, and Slater is now acting pro se.  *See* Dkt.

22   Nos. 48, 66.

23        The FDIC asks for summary judgment across the board on Slater's claims.  Dkt. No. 70.

24   The parties' familiarity with the record is assumed.  Summary judgment is granted and denied in

25   part.

26

27

28

United States District Court
Northern District of California

**DISCUSSION**

## I.    LEGAL STANDARDS

Parties "may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The Court may dispose of less than the entire case and even just portions of a claim or defense."  *CZ Servs., Inc. v. Express Scripts Holding Co.*, No. 3:18-cv-04217-JD, 2020 WL 4368212, at *2 (N.D. Cal. July 30, 2020) (citing *Smith v. Cal. Dep't of Highway Patrol*, 75 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A fact is material if it could affect the outcome of the suit under the governing law.  *Id.*  To determine whether a genuine dispute as to any material fact exists, the Court views the evidence in the light most favorable to the nonmoving party, and "all justifiable inferences are to be drawn" in that party's favor.  *Id.* at 255.  The moving party may initially establish the absence of a genuine issue of material fact by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  It is then the nonmoving party's burden to go beyond the pleadings and identify specific facts that show a genuine issue for trial.  *Id.* at 323-24.  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

"It is not the Court's responsibility to root through the record to establish the absence of factual disputes, or to look for evidence on the nonmoving parties' behalf."  *CZ Servs., Inc.*, 2020 WL 4368212, at *3 (internal citations omitted); *see also Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 989 (N.D. Cal. 2017), *aff'd*, 932 F.3d 861 (9th Cir. 2019).

## II.    CALIFORNIA EQUAL PAY ACT

Summary judgment is granted in favor of the FDIC on the California Equal Pay Act (CEPA) claim.  CEPA makes it "unlawful for employers to pay employees of one gender less than

2

employees of the other gender 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Riley v. Bd. of Trs. of California State Univ.*, No. 13-cv-02983-JD, 2015 WL 2198247, at *5 (N.D. Cal. May 11, 2015) (quoting Cal. Lab. Code § 1197.5(a)). "To prove a violation of [CEPA], a plaintiff must establish that, based on gender, the employer pays different wages to employees doing substantially similar work under substantially similar conditions." *Hall v. City of Los Angeles*, 148 Cal. App. 4th 318, 323 (2007); *see also Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1219 (9th Cir. 2021) ("In an Equal Pay Act case, the plaintiff has the burden of establishing a prima facie case of discrimination by showing that employees of the opposite sex were paid different wages for equal work." (quoting *Stanley v. University of Southern California*, 178 F.3d 1069, 1073-74 (9th Cir. 1999))).[1] Substantially similar work means work "which requires equal skill, effort, and responsibility." *Green v. Par Pools, Inc.*, 111 Cal. App. 4th 620, 628 (2003) (quoting Cal. Lab. Code § 1197.5(a)). A plaintiff must present a comparison of "the jobs in question," and not "the individuals who hold the jobs." *Stanley*, 178 F.3d at 1074.

Slater has not adduced evidence from which a reasonable jury could conclude that male employees were paid more than her for substantially similar work. The record indicates, without dispute, that Slater's salary was on par with male employees in the same job classification, and in several cases was higher than the male employees. *See* Dkt. No. 62-1 at ECF p. 2; Dkt. No. 62-2. Slater says "at least one male employee" doing similar work was paid more than her, Dkt. No. 77 ¶ 7, but Slater did not provide any evidence to that effect, and did not demonstrate that the unnamed colleague actually performed substantially similar work under similar conditions for higher pay. Slater did not identify any other ostensible grounds for her CEPA claim. Consequently, Slater cannot carry her burden of proof at trial for under CEPA, and summary judgement for the FDIC is warranted.

---

[1] CEPA "is substantively identical to its federal counterpart" codified at 29 U.S.C. § 206(d). *Riley*, 2015 WL 2198247, at *5 (citing *Green v. Par Pools Inc.*, 111 Cal. App. 4th 620, 623 (2003)). California state courts "rely on federal authorities construing the federal statute." *Hall*, 148 Cal. App. 4th at 323.

### III.    UNPAID OVERTIME

Slater alleged a claim for unpaid overtime spanning several years under California Labor Code § 510.  The FDIC's main theory is that Slater worked as a "Preferred Banking Office Manager" (PBO Manager) in charge of running a branch office, and so was exempt from the California overtime pay regulations under California Labor Code Section 515.  *See* Dkt. No. 70 at 9-13.  Genuine disputes of material fact preclude summary judgment.

In California, an employee in an executive, administrative, or professional capacity is exempt from entitlement to overtime pay.  *See* Cal. Lab. Code § 515(a).  The FDIC focuses on the exemption of executive employees, Dkt. No. 70 at 10, which applies when an employee manages a department or other subdivision, regularly supervises two or more employees, has authority to hire and fire employees or make recommendations for such that are given particular weight, exercises independent judgment, and earns a monthly salary no less than two times the state minimum wage.  *See* 8 Cal. Code. Regs. § 11040.  "The employer bears the burden of proving that an employee is properly designated as exempt."  *United Parcel Serv. Wage & Hour Cases*, 190 Cal. App. 4th 1001, 1010 (2010) (citations omitted).

The key factual inquiry is whether an employee was "primarily engaged in duties that meet the test of the exemption."  Cal. Lab. Code § 515(a).  "Primarily" is defined in the Labor Code to mean "more than one-half of the employee's worktime."  *Id.* § 515(e).  As this definition connotes, "a purely quantitative approach" is required to determine whether an employee's worktime is spent on exempt activities.  *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 797 (1999).  This entails an examination of "the work actually performed by the employee during the course of the workweek" along with "the amount of time the employee spends on such work," in addition to the employer's "realistic expectations" about the job.  8 Cal. Code. Regs. § 11040; *see also Ramirez*, 20 Cal. 4th at 802; *UPS Wage & Hour Cases*, 190 Cal. App. 4th at 1014-15 ("foremost" factor is "the actual job duties performed by that employee").

The problem for the FDIC is that it did not adduce evidence establishing that Slater was primarily engaged in exempt activities.  It relies almost entirely on Slater's job description as a PBO Manager, but that hardly answers the question of what Slater actually did during her

United States District Court
Northern District of California

workweek.  The FDIC did not proffer any evidence indicating that Slater spent more than 50% of her work time engaged in duties that might qualify her as an exempt employee.  Slater came somewhat closer to the mark by stating that she devoted 90% of her time to non-executive functions such as "teller and new accounts duties," and describing her day-to-day tasks.  Dkt. No. 77 ¶¶ 3.  Overall, the record establishes a genuine dispute of fact with respect to the exemption that will need to be resolved at trial.

So too for the FDIC's suggestion that it was not on notice that Slater worked overtime. Dkt. No. 70 at 13-14.  What the FDIC knew with respect to Slater's overtime hours is a disputed fact that will require a trial.

The statute of limitations bears mention.  The limitations period for an unpaid overtime claim under Section 510 is three years.  Cal. Civ. Proc. Code § 338(a).  Slater filed her original lawsuit in state court on September 14, 2020, *see* Case No. 23-cv-03747, Dkt. No. 1 at ECF pp. 5-10, and was terminated on September, 14, 2018.  Dkt. No. 1 at ECF p. 28.  Consequently, she may seek to recover overtime wages only for the period of September 14, 2017, to September 14, 2018. *See Aubry v. Goldhor*, 201 Cal. App. 3d 399, 406 (1988) (Section 510 claim "timely filed only as to those paydays within three years prior to commencement of the action.").

## IV.    WAITING TIME PENALTIES

Summary judgment is granted in favor of the FDIC on Slater's claim for waiting time penalties under California Labor Code § 203.  Waiting time penalties require proof that the employer "willfully" failed to pay wages.  Cal. Lab. Code § 203(a).  "The settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done."  *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008) (citing *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7-8 (1981)).  "So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness."  *Id.* at 1204; *see also Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal. 5th 1056, 1078-79 (2024) ("A good faith belief in a legal defense will preclude a finding of willfulness." (quotation omitted)).  "A good faith dispute that any wages are due occurs when an employer presents a defense, based in law or fact which, if

1    successful, would preclude any recovery on the part of the employee.  The fact that a defense is

2    ultimately unsuccessful will not preclude a finding that a good faith dispute did exist.  Defenses

3    presented which, under all the circumstances, are unsupported by any evidence, are unreasonable,

4    or are presented in bad faith, will preclude a finding of a good faith dispute."  8 Cal. Code Regs.

5    § 13520(a) (cleaned up).

6         Slater did not present any evidence that the FDIC acted willfully within the meaning of

7    Section 203.  She says only that she believes she would be entitled to penalties if she prevails on

8    the overtime and other claims.  Dkt. No. 77 ¶ 14.  In effect, Slater proposes penalties merely if the

9    FDIC's defenses are unsuccessful, which Section 203 does not permit.

### V.  MEAL AND REST PERIODS

11        Summary judgment is granted in favor of the FDIC on Slater's meal and rest breaks claims

12   under California Labor Code § 226.7 and § 512.  An employer need only "relieve the employee of

13   all duty for the designated period, but need not ensure that the employee does no work."  *Brinker*

14   *Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1034 (2012).  "Proof an employer had knowledge of

15   employees working through meal periods will not alone subject the employer to liability."  *Id*. at

16   1040.  Rather, an employee must show their employer was "exerting coercion against the taking

17   of, creating incentives to forgo, or otherwise encouraging the skipping of legally protected

18   breaks."  *Id.*

19        Slater did not adduce evidence that she was pressured or coerced into giving up meal and

20   break times.  She says she "skipped meal and rest breaks due to understaffing and constant

21   customer demands," Dkt. No. 77 ¶ 12, and to avoid "needless overtime," *id.* ¶ 16, but nothing in

22   these statements is evidence that she was forced in any way to forego breaks altogether.  Slater

23   also proffered an email from her supervisor advising her to ensure all employees at her bank

24   branch received a 30-minute lunch break, *id.* at ECF p. 20, which cuts against any inference of

25   coercion.

### VI.  UNREIMBURSED BUSINESS EXPENSES

27        Summary judgment is granted in favor of the FDIC on Slater's claim of unreimbursed

28   business expenses under California Labor Code § 2802.  "An employer shall indemnify his or her

United States District Court
Northern District of California

employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802(a). Slater claims reimbursement for her expenditures on items such as "kitchen supplies, food, candy, dog treats, fans, heaters, ladders and tool kits," Dkt. No. 1 at ECF p. 30, but provided no evidence that these expenses were business necessities or incurred as a consequence of her job. She also did not provide any documentation of when these purchases were made or how much she paid. To the extent she claims reimbursement for "Eagle lunches," Dkt. No. 77 at ECF pp. 22, 24, it appears she was paid. *See* Dkt. No. 77 ¶ 17 ("Check finally arrived three months later.").

## VII.    VACATION PAY

Slater says the Bank failed to pay her at termination for unused vacation time, in violation of California Labor Code § 227.3. "California law does not require employers to provide employees with paid vacation." *McPherson v. EF Intercultural Found., Inc.*, 47 Cal. App. 5th 243, 259 (2020). But "if an employer chooses to include paid vacation as a portion of the employee's compensation, the employer is not free to reclaim it after it has been earned." *Minnick v. Automotive Creations, Inc.*, 13 Cal. App. 5th 1000, 1005 (2017). As Section 227.3 states: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his [or her] vested vacation time, all vested vacation shall be paid to him [or her] as wages."

Summary judgment is denied, albeit on the thinnest of margins. Slater states that she forewent scheduled vacations to cover for sick colleagues and attend to other office demands. Dkt. No. 77 ¶ 19. She also says she "had previously accrued vacation time." *Id.* ¶ 20. The FDIC was unduly vague about the vacation time claim, and relied mainly on a vacation policy change that was poorly documented and not clearly explained in its brief. On this muddled and underdeveloped record, the Court cannot say that there is no genuine dispute of fact such that the FDIC is entitled to summary judgment.

The applicable statute of limitations bears mention here, too. "[T]he four year statute of limitations provided by Code of Civil Procedure section 337 applies to [a] claim for payment for

unused vacation time" under Section 227.3.  *Sequeira v. Rincon-Vitova Insectaries, Inc.*, 32 Cal. App. 4th 632, 634 (1995).  As noted, Slater filed her state court lawsuit on September 14, 2020, which was within four years of her termination on September, 14, 2018.  The claim is timely.

The more nuanced question is whether Slater can recover only the vacation time accrued within four years of filing her lawsuit.  California courts have not spoken with one voice on this issue.  *See, e.g.*, *Sequeira*, 32 Cal. App. 4th at 636-37 ("Because Sequeira could have demanded the right to take a vacation as soon as it accrued under his contract with Rincon, his cause of action accrued at that time as well."); *Church v. Jamison*, 143 Cal. App. 4th 1568, 1583 (2006) ("[T]he statute of limitations cannot be applied as a look-back period to limit an employer's statutory obligation to pay for all vested vacation time that an employee did not take before the employment was terminated.").  *Church* relies on California Supreme Court authority that was not yet decided at the time of *Sequeira*, and so the Court will apply it here to conclude that Slater may seek to recover all vested but unpaid vacation time.

### VIII.   UNFAIR COMPETITION

Slater alleged a claim for restitution of unpaid overtime wages and equal pay under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*  Dkt. No. 1 at ECF p. 29.  The CEPA claim is dismissed, and so only the question of overtime wages as restitution is in play.  The California Supreme Court has concluded that unpaid wages are restitutionary because they "are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a person surrenders through an unfair business practice." *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178 (2000).  It is also true that Slater may obtain equitable restitution in federal court only if her legal remedies are inadequate. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Slater did not demonstrate that an award of backpay for lost overtime wages would in any way be inadequate, or that restitution would provide a more complete remedy.  There is no discernible difference in Slater's recovery at law or in equity.  Consequently, summary judgment is granted in favor of the FDIC on the UCL claim.

## IX.    TRIAL VACATED

In light of current circumstances with respect to federal court operations, the trial set for October 17, 2025, and all remaining pretrial dates are vacated.  A status conference is set for December 11, 2025, at 10:00 a.m.

With the dispositions in this order, Slater's claims for trial are limited to one year of unpaid overtime wages, and accrued vacation time.  The parties are ordered to a settlement conference with the Hon. Laurel Beeler, to be scheduled at her convenience.  Each side must have full authority to settle during the conference.

**IT IS SO ORDERED.**

Dated:  October 14, 2025

_____
JAMES DONATO
United States District Judge